IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

TADEUSZ JOZEF WAJLER,

        **Plaintiff,**

v.                           **CIVIL ACTION NO. 1:13CV156**
                                    **(Judge Keeley)**

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

        **Defendant.**

## MEMORANDUM OPINION AND ORDER ADOPTING
## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b), and L.R. Civ. P. 4.01(d), on June 7, 2013, the Court referred this Social Security action to United States Magistrate David J. Joel ("Magistrate Judge Joel") with directions to submit proposed findings of fact and a recommendation for disposition. Due to Judge Joel's retirement, the case was reassigned to Magistrate Judge James E. Seibert ("Magistrate Judge Seibert") on October 17, 2013, and then, on June 9, 2014, reassigned to Magistrate Judge Robert W. Trumble ("Magistrate Judge Trumble or magistrate judge") (dkt. no. 19). Magistrate Judge Trumble filed his Report and Recommendation ("R&R") (dkt. no. 20) on August 1, 2014, and directed the parties, in accordance with 28 U.S.C. § 636(b)(1) and Rule 6(e), Fed. R. Civ. P., to file any written objections with the Clerk of Court within fourteen (14) days after being served with a copy of the R&R.

**MEMORANDUM OPINION AND ORDER ADOPTING**
**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

On August 14, 2014, the plaintiff, Tadeusz Jozef Wajler ("Wajler'), through his attorney, Michael Miskowiec, filed objections to the R&R (dkt. no. 21), and also filed a "Motion to Remand For Consideration of New and Material Evidence Pursuant to the Sixth Sentence of 42 U.S.C. § 405(G) (dkt. no. 22). On August 25, 2014, the Commissioner responded to the motion to remand (dkt. no. 24), to which Wajler replied on September 2, 2014 (dkt. no. 25).

## I. PROCEDURAL BACKGROUND

Wajler applied for disability benefits under Title II of the Social Security Act, 42 U.S.C. § 401-434, alleging that he became unable to wok on February 3, 2011, due to dysuria, influenza and related symptoms, myofascial pain syndrome, nausea, vomiting, carpal tunnel syndrome ("CTS"), neuropathy, piriformis syndrome, headaches, and degenerative disc disease/degenerative arthritis of the lumbar spine, status post double discectomy with residual back pain and radiculopathy, history of cervical and thoracic strain, and somatic dysfunction of the thoracic, lumbar, and pelvic areas.

Following denial of the application initially and on reconsideration (R. 60-63, 71-76), Wajler requested a hearing, which an administrative law judge ("ALJ") conducted on October 11,

**MEMORANDUM OPINION AND ORDER ADOPTING**
**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

2012, (R. at 91).[1] Wajler, represented by counsel, appeared and
testified at the hearing. An impartial vocational expert ("VE")
also appeared and testified. (R. 34-59). On November 30, 2012, the
ALJ found that Wajler was not disabled (R. 17-28).

The Appeals Council denied Wajler's timely request for a
review of the ALJ's decision (R. 6-13) on April 23, 2013, thus
making the ALJ's decision the final decision of the Commissioner
(R. 1-5). On June 7, 2013, Wajler filed this action seeking review
of that final decision (dkt no. 1).

## II.  PLAINTIFF'S BACKGROUND

On October 11, 2012, the date of the administrative hearing,
Wajler was forty-five (45) years old and thus is considered a
younger individual pursuant to 20 CFR 404.1563 and 416.963. (R.
27). He has a high school education, including two years of
vocational school for auto body work (R. 38). He previously worked
as an auto body technician from 1988 until his second back surgery
in February, 2011 (R. at 177), and worked for approximately one

---

[1] The record in various places erroneously indicates that the
hearing took place on August 11, 2011, the date the hearing was
requested; however, the correct date of the hearing is October 11,
2012.

year in mine shaft construction. (*Id.*). He is married and has ten (10) children, all under the age of eighteen (R. 117-18).

### III. <u>ADMINISTRATIVE FINDINGS</u>

Utilizing the five-step sequential evaluation process prescribed in the Commissioner's regulations at 20 C.F.R. §§ 404.1520, the ALJ found as follows:

1. Wajler met the insured status requirements of the Social Security Act through December 31, 2015[2];

2. Wajler has not engaged in substantial gainful activity since February 3, 2011, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.);

3. Since February 3, 2011, Wajler has had the following medically determinable impairments that, either individually or in combination, are "severe" and significantly limited his ability to perform basic work activities for a period of at least 12 consecutive months: history of degenerative disc disease/degenerative arthritis of the lumbar spine, status post double discectomy with residual back pain and radiculopathy; history of cervical and thoracic strain; and somatic dysfunction of the thoracic, lumbar, and pelvic areas (20 CFR 404.1520(c) and 416.920(c));

4. Wajler does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR

---

[2] On the first page of the ALJ's decision, he states that Wajler "has acquired sufficient quarters of coverage to remain insured through December 31, 2014."

404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926);

5.  After careful consideration of the entire record, the magistrate judge determined that, since February 3, 2011, Wajler has had the residual functional capacity to perform a range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) with the following limitations, a sit/stand option without breaking task, with the ability to sit, stand, and walk for at least 15 minutes each at a time, can perform postural movements occasionally, but should do minimal squatting and cannot climb ladders, ropes, or scaffolds, should do all walking on level and even surfaces, and should use a cane for ambulation, should have no exposure to temperature extremes, wet or humid conditions, or hazards, and is limited to unskilled work involving only routine and repetitive instructions and tasks;

6.  Wajler is unable to perform any past relevant work (20 CFR 404.1565 and 416.965);

7.  Wajler was born on May 2, 1967 and was 43 years old on the alleged disability onset date and therefore is defined as a younger individual age 18-44. His age category subsequently changed to a younger individual age 45-49 (20 CFR 404.1563 and 416.963);

8.  Wajler has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964);

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that he is "not disabled," whether or not he has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2);

     10.   Considering his age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that he can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)); and

     11.   Wajler has not been under a disability, as defined in the Social Security Act, from February 3, 2011 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(R. at 17-28).

## IV.  OBJECTIONS

On August 19, 2014, counsel for Wajler filed objections to the R&R that essentially reiterated his arguments in support of his motion for summary judgment. These objections challenged the magistrate judge's determination that there was substantial evidence in the record to support the ALJ's credibility determination, and the Commissioner's conclusion that there are jobs in significant numbers in the national economy that Wajler can perform. (Dkt. No. 21 at 1-2).

In his summary judgment motion, Wajler had objected that the record did not contain substantial evidence to support the ALJ's determination that Wajler's testimony regarding his pain, limitations due to back and left leg pain, and his pain management treatment was not credible. He also objected to the ALJ's reliance

on the testimony of the VE to satisfy the Commissioner's burden of showing that there are jobs in significant numbers in the national economy that Wajler could perform. (Dkt. No. 20 at 29).

Then, and now, Wajler contends that the ALJ misread the medical evidence of record, specifically the January 27, 2011, MRI (Pl.'s Objs. to the R&R at 2, and Pl.'s Br. at 15), and that the jobs identified by the VE from the Dictionary of Occupational Titles (DOT) did not accommodate Wajler's deficit in reading (Pl.'s Objs. to the R&R at 5 and Pl.'s Br. at 15).

Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court is required to conduct a de novo review of those portions of the magistrate judge's R&R to which objections have been filed. It need not, however, conduct a de novo review when a party's objections are only "general and conclusory," and "do not direct it to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). In the absence of a specific objection, the Court only reviews the magistrate judge's conclusions for clear error. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005). A failure to file specific objections also waives appellate review of both factual and legal questions. See United States v. Schronce, 727

F.2d 91, 94 & n.4 (4th Cir. 1984); see also Moore v. United States, 950 F.2d 656, 659 (10th Cir. 1991).

Wajler's objections repeat arguments already considered by the magistrate judge – that the ALJ misread the objective medical evidence regarding his pain and any pain management treatment utilized to address his pain, and also failed to include his decreased attention span in reading due to his pain in the hypothetical presented to the VE. See Phillips v. Astrue, No. 6:10-53, 2011 WL 5086851, at *2 (W.D. Va. Oct. 25, 2011 ("General objections to a magistrate judge's report and recommendation, reiterating arguments already presented, lack the specificity required by Rule 72 and have the same effect as a failure to object." (citing Veney v. Astrue, 539 F.Supp.2d 841, 845 (W.D. Va. 2008)).

Out of consideration to Wajler's contentions, the Court has undertaken a de novo review of all the matters considered by the magistrate judge. For the reasons that follow, it concludes not only that there is no clear error, but also that there is substantial evidence in the record to support the Commissioner's decision.

**MEMORANDUM OPINION AND ORDER ADOPTING**
**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

---

## V.   MEDICAL  AND VE'S EVIDENCE

The Court incorporates the magistrate judge's extensive review of the medical evidence predating Wajler's alleged onset date of February 3, 2011 (R&R at 3-15), as well as the medical evidence that postdates the alleged onset date of February 3, 201l (R&R at 15-26). The Court also incorporates the magistrate judge's summary of the VE's testimony, and the additional VE evidence (R&R at 26-28).

## VI.   DISCUSSION

### A.   Credibility Analysis

Wajler contends that the ALJ misread portions of the objective medical evidence (dkt. no. 14 at 11), and that substantial evidence supports his testimony regarding debilitating headaches and back pain. Wajler argues that the ALJ's analysis of his credibility did not satisfy the controlling test in Craig v. Chater, 76 F.3d 585 (4th Cir. 1996). (Dkt. No. 21 at 3).

1.

In Craig, the Fourth Circuit established a two-prong test for evaluating a claimant's subjective complaints of pain. The first prong requires an ALJ to determine whether there is objective evidence to establish the existence of a medical impairment or

impairments resulting from anatomical, physiological or psychological abnormalities that could reasonably be expected to produce the pain or other symptoms alleged. Id. at 594. The second prong requires an ALJ to "expressly consider" whether a claimant has such an impairment. Id. at 596.

If a claimant satisfies these two prongs, an ALJ then must evaluate the "intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work." Id. at 595. In this evaluation, an ALJ must consider

> not only the claimant's statements about her pain, but also 'all the available evidence,' including the claimant's medical history, medical signs, and laboratory findings . . . and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

Id.

Prior to Craig, in Shively v. Heckler, 739 F.2d 987, 989–90 (4th Cir. 1984), the Fourth Circuit concluded that "[b]ecause he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight" (citing Tyler v. Weinberger, 409 F.Supp. 776 (E.D. Va. 1976)).  Once made, an ALJ's

credibility determination will be reversed only "if the claimant can show it was 'patently wrong.'" Powers v. Apfel, 207 F.3d 431, 435 (7th Cir. 2000) (quoting Herr v. Sullivan, 912 F.2d 178, 181 (7th Cir. 1990)).

Nevertheless, despite the great deference given to an ALJ's credibility determination, SSR 96-7p requires that an ALJ articulate sufficiently the reasons for his determination. Thus, the ALJ's determination or decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Id. at *2.

SSR 96-7p outlines the factors an ALJ should consider to assess the credibility of an individual's subjective allegations of pain. These include the individual's daily activities, the location, duration, frequency, and intensity of the individual's pain or other symptoms, any factors that precipitate and aggravate the symptoms, the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms, any treatment or other than medication, the

individual receives or has received for relief of pain or other symptoms, any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board), and, any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996).

Here, the ALJ followed Craig's two-prong test, as well as the requirements in 20 C.F.R. § 404.1529(c)(3). The magistrate judge noted that the objective evidence established the existence of a medical impairment that could reasonably be expected to produce the pain or other symptoms Wajler alleged, and that those impairments could reasonably be expected to produce the symptoms alleged. (R&R at 33). He also noted the ALJ's consideration of the objective medical evidence, Wajler's statements regarding his activities of daily living, the location, duration, frequency, and intensity of his pain, the precipitating and aggravating factors that caused his pain, and the treatment he underwent to mitigate the pain. (R&R at 34-35). Only after having completed a thorough analysis of the factors in Craig, as well as 20 C.F.R. § 404.1529(c)(3), did the ALJ conclude that Wajler's statements concerning the intensity,

**MEMORANDUM OPINION AND ORDER ADOPTING**
**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

persistence and limiting effects of these symptoms were not
entirely credible. (R&R at 34).

### 2.

In the R&R, the magistrate judge considered each of Wajler's
claims to determine whether substantial evidence supported the
ALJ's credibility analysis, and his ultimate denial of Wajler's
disability claim. He noted that "[t]he court will not reverse an
ALJ's decision for harmless error, which exists when it is clear
from the record that the ALJ's error was inconsequential to the
ultimate nondisability determination." Tommasetti v. Astrue, 533
F.3d 1035, 1038 (9th Cir. 2008); see also Keys v. Barnhart, 347
F.3d 990, 994-95 (7th Cir. 2003) (stating that "[t]he doctrine of
harmless error . . . is fully applicable to judicial review of
administrative decisions"); Hurtado v. Astrue, 2010 WL 3258272, at
*11 (D.S.C. July 26, 2010) (finding that "[t]he court acknowledges
there may be situations in which an error in an opinion is harmless
because it would not change the outcome of the ALJ's decision");
cf. Ngarurih v. Ashcroft, 371 F.3d 182, 190 n. 8 (4th Cir. 2004)
(explaining that "[w]hile the general rule is that an
administrative order cannot be upheld unless the grounds upon which
the agency acted in exercising its powers were those upon which its

action can be sustained, reversal is not required where the alleged error clearly had no bearing on the procedure used or the substance of the decision reached."). (R&R at 35-6).

The magistrate judge acknowledged that the ALJ had erroneously referenced Wajler's January 27, 2010 MRI as the last of his pre-alleged onset date MRI studies (R. at 23), and also had misquoted the MRI, stating it indicated that granulation tissue did not contact the S1 nerve, when the study clearly established that there was such contact. (Id.). The magistrate judge, however, found that these errors involved medical evidence relating to Wajler's pre-alleged onset conditions, and, as such, were only two of many factors the ALJ relied on in making his credibility analysis. He further noted that the ALJ had evaluated all four of the pre-alleged onset date MRIs. Although the ALJ's references to the January 27, 2010 MRI was incorrect, his references to Wajler's three other MRIs, including the succeeding ones from September, 2010 and October, 2010, only four (4) months before Wajler's second surgery, contained no errors.

The magistrate judge further noted that, at the hearing before the ALJ, Wajler testified that headaches were one of his worst medical problems, but that he did not treat them because nothing

helped. (R&R at 38). The medical records documented that Wajler had reported experiencing cluster headaches since the age of sixteen, that medication had relieved his headaches, and that his medical records after 2006 rarely noted any complaints of headaches. (R&R at 23). The record also reflected that, despite his allegation of total disabling headaches since approximately 1983, Wajler had been substantially and gainfully employed until 2010.

After carefully reviewing the record in Wajler's case, the magistrate judge determined that any error relating to the pre-alleged onset medical record was harmless, and the ALJ's other findings regarding the headaches and the post-alleged onset MRIs substantially supported the ALJ's credibility analysis and ultimate determination that Wajler was not disabled.

3.

Wajler contends that the ALJ incorrectly stated that, just prior to February 3, 2011, the alleged onset date, he reported his pain was under control and improving with the use of Naproxem and Norco for pain, denied any sleep problems, was independent in his personal care, and had elected to undergo a second surgery. (R. at 23, R&R at 39-40). Wajler argues there is no substantial evidence

that any doctor indicated his pain "was being controlled by naproxen and norco." (Dkt. No. 14 at 11).

As the magistrate judge correctly found, however, the evidence is clearly otherwise:

1.    On November 1, 2010, Dr. Sedney of WVU Healthcare reported to Dr. Bailes that Wajler had good resolution of his symptoms until September 2010. (R. at 414);

2.    Following a hospital admission for sudden onset of severe back pain, an October 14, 2010 MRI reported an "extruded fragment of the L4-5 disc. (R. at 526). The discharge record indicates that "[t]he patient was released from the hospital with his pain under control and reports that since then it has been improving although he continues to take naproxen and norco for pain." (Id.); and

3.    Wajler continued to take Naproxen and Norco for pain, even as late as January 3, 2011. (R. at 452-4).

Based on this, the magistrate judge determined that substantial evidence supported the ALJ's finding that Wajler's pain had been controlled with medication. Alternatively, he concluded that, if there was any error, it was harmless.

4.

Wajler also contends that the ALJ's finding that he had failed to pursue treatment for pain management was erroneous. What the ALJ noted, however, was that Wajler had failed to attend an appointment at a pain clinic on November 10, 2011, had taken no further action after that to seek pain management despite alleging totally disabling pain, and instead had applied for disability because he had no insurance to seek medical care. (R. at 24).

The magistrate judge's determination that substantial evidence existed to support the ALJ's credibility determination, and that any errors were harmless, is not clearly wrong as a matter of law.

**B. Residual Functional Capacity Analysis**

At the fifth step of the sequential evaluation, "the burden shifts to the [Commissioner] to produce evidence that other jobs exist in the national economy that a claimant can perform given his age, education, and work experience." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). In making this determination, an ALJ must consider the claimant's residual functional capacity, "age, education, and past work experience to see if [he] can do other work." 20 C.F.R. §§ 404.1520(f)(1), 416.920(f)(1). An ALJ may rely on VE testimony to assist in determining whether other work exists

in the national economy that a claimant can perform. 20 C.F.R. §§ 404.1566(e), 416.966(e).

The Fourth Circuit has held that "[t]he purpose of bringing in a vocational expert is to assist the ALJ in determining whether there is work available in the national economy which the particular claimant can perform." Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). When "questioning a vocational expert in a social security disability insurance hearing, the ALJ must propound hypothetical questions to the expert that are based upon a consideration of all relevant evidence of record on the claimant's impairment." English v. Shalala, 10 F.3d 1080, 1085 (4th Cir.1993) (citing Walker v. Bowen, 876 F.2d 1097, 1100 (4th Cir.1989)).

If the ALJ's hypothetical question to the VE accurately reflects all of the claimant's limitations, the VE's response is binding on the Commissioner. Edwards v. Bowen, 672 F. Supp. 230, 235 (E.D.N.C. 1987). The reviewing court shall consider whether the hypothetical question "could be viewed as presenting those impairments the claimant alleges." English v. Shalala, 10 F.3d 1080, 1085 (4th Cir. 1993).

Here, the ALJ concluded as follows:

18

> After careful consideration of the entire
> record, the undersigned finds that, since
> February 3, 2011, the claimant has had the
> residual functional capacity to perform a
> range of sedentary work as defined in 20 CFR
> 404.1567(a) and 416.967(a) with the following
> limitations: the claimant requires a sit/stand
> option without breaking task, with the ability
> to sit, stand, and walk for at least 15
> minutes each at a time; the claimant can
> perform postural movements occasionally, but
> should do minimal squatting and cannot climb
> ladders, ropes, or scaffolds; to the maximum
> extent possible, the claimant should do all
> walking on level and even surfaces, and the
> claimant requires a cane for ambulation; the
> claimant should have no exposure to
> temperature extremes, wet or humid conditions,
> or hazards; and lastly, the claimant is
> limited to unskilled work involving only
> routine and repetitive instructions and tasks.

(R. at 21).

Even though Wajler testified he had a decreased attention span
in reading due to pain and his medications (R. at 41, 48), there is
no substantial evidence in the medical records documenting any
decreased attention in reading. Nevertheless, the ALJ specifically
found:

> However, the undersigned also fully considered
> the claimant's updated treatment records and
> the claimant's allegations and gave them some
> weight, in conjunction with the other relevant
> evidence as well as the limited weight given
> to the medical evidence as well as the limited
> weight given to the medical source statements
> of Dr. Morris, in finding that the claimant is

> limited to sedentary work subject to additional exertional and nonexertional limitations, including but not limited to, being limited to unskilled work involving only routine and repetitive instructions and tasks <u>to accommodate the claimant's hearing testimony of decreased attention span in reading due to pain</u> as well as to decrease any stress that might aggravate the claimant's symptoms.

(R. at 25) (Emphasis added).

The magistrate judge determined that, even though the ALJ had not specifically used the words "a decreased attention span in reading due to pain" in his hypothetical to the VE, he specifically stated in his decision that he had considered and accommodated Wajler's hearing testimony of decreased attention span in reading due to pain. The magistrate judge noted that the evidence of record regarding Wajler's actual reading level is "sparse," and therefore found that the hypothetical question to the VE contained all of the limitations supported by the evidence of record. (R&R at 45).

## C. Combination of Impairments Analysis

At the second step of the five-step sequential evaluation process established in the Commissioner's regulations at 20 C.F.R. § 404.1520, an ALJ is required to determine if a claimant has a severe medically determinable physical or mental impairment, or a

**MEMORANDUM OPINION AND ORDER ADOPTING
MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

combination of impairments that meets or equals the severity of one of the listed impairments. After an extensive review of the record, the ALJ concluded that Wajler did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (R. at 20). In <u>Walker v. Bowen</u>, 889 F.2d 47, 50 (4th Cir. 1989), the Fourth Circuit held that, as part of this analysis, an ALJ must "adequately explain his or her evaluation of the combined effects of [a claimant's] impairments." <u>See also</u> <u>Reid v. Commissioner</u>, No. 13-1480, __ F.3d __ (4th Cir. Sept. 16, 2014).

In documenting Wajler's severe impairments, the ALJ included the following: a history of degenerative disc disease/degenerative arthritis of the lumbar spine; status post double discectomy with residual back pain and radiculopathy; history of cervical and thoracic strain; and somatic dysfunction of the thoracic, lumbar, and pelvic areas. He further found that all the other impairments Wajler alleged were not severe, or not medically determinable either because they had responded to treatment, or because they had caused no more than minimal vocationally relevant limitations, or because they had not lasted, or were not expected to last, the continuous period of twelve months, or because they were not

21

expected to result in death, or because they had not been diagnosed by an acceptable medical source. (R. at 20).

It is evident that the ALJ considered Wajler's impairments in combination. After a thorough review of all the evidence, he concluded that Wajler did not "have an impairment or combination of impairments that met or equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926):

> In so concluding, the undersigned has appropriately evaluated medical and other evidence pertaining to the claimant's medially (sic) determinable impairments in conjunction with all relevant severity criteria contained within, and including but not limited to, the *1.00 Musculoskeletal System series of listed impairments*.
> . . .
> Evidence considered in reaching the foregoing conclusions is discussed below in conjunction with the determination of the claimant's residual functional capacity.

(R. at 20).

After carefully considering the record, the Court is satisfied that the ALJ weighed all the evidence of Wajler's impairments in combination before concluding that

> [t]he claimant has medically determinable impairments that could reasonably be expected to cause some of the symptoms described and

> the undersigned believes that the claimant
> does experience symptoms, but not to the
> debilitating degree of severity alleged. In
> view of this determination concerning the
> claimant's credibility, the undersigned does
> not accept medical findings or opinions that
> are based solely or primarily upon the
> claimant's subjective complaints.

(R. at 26).

## VII. <u>MOTION TO REMAND</u>

On August 14, 2014, counsel for Wajler filed a "Motion to Remand for Consideration of New and Material Evidence Pursuant to the Sixth Sentence of 42 U.S.C. § 405(g)" (dkt. no. 22). On August 25, 2014, the Commissioner responded (dkt. no. 24), and on September 2, 2014, Wajler replied (dkt. no. 25) to that response. For the reasons that follow, the Court **DENIES** the motion to remand.

Wajler contends that the evidence of his surgery on May 30, 2014, to implant a permanent spinal cord stimulator, is relevant to his 2011 claim because one of the factors the ALJ relied on in his decision denying the claim was Wajler's failure to pursue further pain management treatment (Dkt. no. 23 at 2). The Commissioner asserts that Wajler failed to satisfy all of the requirements for remand under sentence six of 42 U.S.C. § 405(g), contending that

**MEMORANDUM OPINION AND ORDER ADOPTING**
**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

the evidence submitted "does not relate to the time period that was under consideration by the ALJ." (Dkt. No. 24 at 5).

The Commissioner further contends that, because counsel for Wajler specifically indicated at the August 11, 2011, hearing that they had no further evidence and agreed that the record could be closed (dkt. no. 24 at 6, R. at 59), Wajler failed to establish good cause for a sentence six remand. See <u>Parris v. Colvin</u>, No. 2:13-CV-00004-FDW, 2014 WL, 427697, at *5 (Feb. 4, 2014 W.D.N.C.))(finding a Court "will not find good cause exists where a plaintiff creates and submits new evidence after an unfavorable decision by and ALJ . . . in an attempt to get a proverbial second bite at the apple with a more favorable ALJ. To permit otherwise would be a waste of judicial economy.") (Dkt. No. 24 at 6).

In <u>Wilkins v. Secretary</u>, 953 F.2d 93-5 (4th Cir. 1991), the Fourth Circuit determined that the Appeals Council must consider evidence submitted to it if the evidence is (a) new, (b) material, and (c) <u>relates to the period on or before the date of the ALJ's decision</u>. (Emphasis added.) Prior to <u>Wilkins</u>, in <u>Borders v. Heckler</u>, 777 F.2d 954-5 (4th Cir. 1985), the Fourth Circuit concluded:

> A reviewing court may remand a Social Security case to the Secretary on the basis of newly

MEMORANDUM OPINION AND ORDER ADOPTING
MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

discovered evidence if four prerequisites are
met. <u>The evidence must be 'relevant to the
determination of disability at the time the
application was first filed and not merely
cumulative.'</u> <u>Mitchell v. Schweiker</u>, 699 F.2e
185, 188 (4th Cir. 1983). It must be material
to the extent that the Secretary's decision
'might reasonably have been different' had the
new evidence been before her. <u>King v.
Califano</u>, 599 F.2d 597, 599 (4th Cir. 1979);
<u>Sims v. Harris</u>, 631 F.2d 26, 28 (4th Cir.
1980). There must be good cause for the
claimant's failure to submit the evidence when
the claim was before the Secretary, 42 U.S.C.
§ 405(g), and the claimant must present to the
remanding court 'at least a general showing of
the nature' of the new evidence. <u>King</u>, 599
F.2d at 599. (Emphasis added).

The evidence submitted by Wajler in support of his motion to
remand fails to satisfy all of the criteria for a sentence six
remand; it does not relate to the time period on or before the date
of the ALJ's decision, nor does it relate to the time period
considered by the ALJ. Thus, it is not material.

## VIII. <u>CONCLUSION</u>

Upon examination of Wajler's objections, it appears he has not
raised any issues that were not thoroughly considered by Magistrate
Judge Trumble in his R&R. Moreover, the Court, upon an independent
<u>de novo</u> consideration of all matters now before it, is of the
opinion that the R&R accurately reflects the law applicable to the

## MEMORANDUM OPINION AND ORDER ADOPTING
## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

facts and circumstances before the court in this action. Therefore, it **ACCEPTS** the R&R in whole and **ORDERS** that this civil action be disposed of in accordance with the recommendation of the magistrate judge. Accordingly, it

1. **GRANTS** the defendant's motion for Summary Judgment (dkt no. 16) ; and

2. **DENIES** Wajler's motion for Summary Judgment (dkt. no. 13).

The Court also **DENIES** Wajler's motion to remand, (dkt. no. 22) and **DISMISSES** this civil action **WITH PREJUDICE** and **RETIRES** it from the docket of this Court.

Pursuant to Fed.R.Civ.P. 58, the Court directs the Clerk of Court to enter a separate judgment order and to transmit copies of this Order to counsel of record.

DATED: September 19, 2014.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE